**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

SHELLEY FRY, *et al.*, *

Plaintiffs, *

v. * Civil Action No. AW-05-3150

PRINCE GEORGE'S COUNTY, *
MARYLAND, *et al.*, *

Defendants. *

* * * * *

**MEMORANDUM OPINION**

Plaintiffs Shelley Fry ("Fry") and Cynthia Cowan ("Cowan") (collectively, "Plaintiffs") bring this case against Prince George's County, Maryland (the "County") and Rhonda Jackson ("Jackson") (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 and a common law claim for tortious interference with business relations. In particular, Plaintiffs claim that the County subjected them to a hostile work environment on the basis of race and that they suffered retaliation when they reported these alleged Title VII violations. Plaintiffs also assert that Jackson tortiously interfered with their business relationships, with their employer, the County. Currently pending before the Court are the County's Partial Motion to Dismiss [9] and Jackson's Motion to Dismiss the Amended Complaint [11]. For the reasons set forth more fully below, this Court will GRANT the County's Motion and GRANT Jackson's Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Court gleans the pertinent facts from the allegations contained in Plaintiffs' Amended Complaint. Plaintiff Fry, a white female, began her employment with the County in 1987. In 1988, Fry joined the Fire Department's Office of Public Safety. It appears that Fry thrived in this office and was quickly promoted. By 1997, Fry became a Community Developer III, and from 2001 to

2002, Fry served as the Acting Director of the Office of Public Affairs.

Cowan began her employment with the County in 1978, but did not work with Fry in the Fire Department until 1997, when she was hired as an Administrative Aide. Like Fry, Cowan ascended through the ranks in the Fire Department, and in 2001, Cowan became a Community Developer II.

In April of 2002, Fry applied for the Director position, for which she was serving as the acting director. The County did not select her for the position, but instead hired Jackson, an African-American female.

Plaintiffs allege that once Jackson assumed the role of Director of the Office of Public Affairs, Jackson "embarked on a campaign of intentional and willful acts of harassment and humiliation against Plaintiff Fry." Am. Compl. ¶ 16. As one example, Plaintiffs state that Jackson removed a filing cabinet and office furniture from Fry's office in December 2002 while Fry was on leave. As yet another example, Plaintiffs claim that, "[w]ithin the first few days of her tenure," Jackson altered Fry's time sheet to deducts hours and reduce Fry's compensation. In addition, Fry's involvement in the child safety programs operated by the County was curtailed and eventually eliminated. Plaintiffs assert that this change occurred at Jackson's behest. These acts, along with others, Plaintiffs claim constituted harassment so severe that it violated the County's criminal code and interfered with Fry's ability to perform her duties as a Community Developer III. Am. Compl. ¶ 29-30.

After witnessing the alleged harassment, Cowan confronted Jackson. In a conversation with Cowan, Jackson purportedly stated that she did not choose Fry as the "Safe Kids" coordinator because "the County did not want a white person representing them in such a public way." Am. Compl. ¶ 35. Troubled by Jackson's behavior, Cowan complained to other County officials.

Cowan believes that because of her complaints, she too became the victim of Jackson's harassment. To minimize her contacts with Jackson, Cowan sought and obtained a transfer to another division.

Ultimately, Fry retained counsel to bring suit against both the County and Jackson. In a letter dated May 31, 2005, Fry's attorney, Gary T. Brown,[1] informed the County that Fry objected to Jackson's treatment of her and that she held the opinion that Jackson's conduct violated Title VII and the state law on harassment. The letter also stated that Fry filed a complaint with the United States Equal Opportunity Commission ("EEOC"), but was hopeful that the correspondence could open "a dialogue with the County to end the unlawful behavior toward . . . Fry." County's Mtn. to Dismiss, Ex.

Apparently, this attempt to negotiate with the County did not succeed, and Fry and Cowan filed the instant suit on November 22, 2005, naming the County and Jackson as defendants. Plaintiffs filed an Amended Complaint on December 7, 2005, which asserts three counts. Counts I and II allege violations of Title VII. Count III sets forth a claim for tortious interference with business relationships. Responding to the Amended Complaint, the County filed a Motion to Dismiss Count III as to the County on January 11, 2006. Just days later, Jackson also filed a Motion to Dismiss the Amended Complaint on January 19, 2006.

**STANDARD OF REVIEW**

A court should deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In

[1] Brown has subsequently become Cowan's attorney and brings this suit on behalf of both Fry and Cowan.

determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Therefore, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

## ANALYSIS

### I. Counts I and II

Relying on Rule 12(b)(6), Jackson has moved to dismiss Counts I and II, which set forth claims under Title VII. It is well settled that supervisors cannot be held liable in their individual capacities under Title VII. *See Lissau v. Southern Food Servs., Inc.*, 159 F.3d 177, 181 (4th Cir.

1998). Plaintiffs concede this fact and have clarified that their Title VII claims relate only to the County, not to Jackson. Consequently, this Court will dismiss Counts I and II as to Jackson.

II. Count III

In addition to Counts I and II, Jackson urges this Court to dismiss Count III of Plaintiffs' Amended Complaint.

Supporting their claim for tortious interference with economic relations, Plaintiffs aver that Jackson's actions "dramatically changed" their business relationships with their employer. Plaintiffs have clarified that this cause of action, Count III, is brought solely against Defendant Jackson. Jackson contends that this Court should dismiss Count III because Plaintiffs' Amended Complaint fails to plead sufficient facts to support a claim for tortious interference with economic relations. In the alternative, Defendants argue that Plaintiffs did not comply with the procedure prescribed by the Local Government Tort Claims Act ("LGTCA").

A. Tortious Interference with Economic Relations

Generally, the tort of intentional interference with economic relations or business relations occurs when a third party interferes with prospective business relationships or contracts terminable at will. *See K & K Management, Inc. v. Lee,* 557A.2d 965, 973 (Md. 1989) ("Tortious interference with business relationships arises only out of the relationships between three parties, the parties to a contract or other economic relationship. . . and the interferer"); *Kramer v. Mayor and City Council of Baltimore,* 723 A.2d 529, 539 (Md. Ct. Spec. App. 1999) (explaining that this tort "pertains to prospective business relations, or to contracts terminable at will"), *cert. denied,* 354 Md. 114, 729 A.2d 405. To sustain a claim for damages for this tort under Maryland law, a plaintiff must prove: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful

business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Willner v. Silverman*, 71 A. 962, 964 (Md. 1909); *see also Kramer*, 723 A.2d at 540; *Carter v. Aramark Sports and Entm't Servs., Inc.* 835 A.2d 262, 279-80 (Md. Ct. Spec. App. 2003). This tort seeks to remedy "interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships. Wrongful or unlawful acts include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Alexander & Alexander, Inc. v. B. Dixon Evander Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994) (citing *K & K Management v. Lee,* 557 A.2d 965, 979 (Md. 1989) (quoting Prosser, *Law of Torts* § 130, 952-953 (4th ed. 1971)) (internal quotation marks omitted). When a supervisor is alleged to have committed this tort, plaintiff must offer evidence that the supervisor acted solely for her personal benefit outside the scope of her duties and without the intent to further the interests of her employer. *See Miller v. Ratner*, 688 A.2d 976, 997 (Md. Ct. Spec. App. 1997); *Bleich v. Florence Crittenton Servs.*, 632 A.2d 463, 475 (Md. Ct. Spec. App. 1993) ("when an employee acts within the scope of her employment, or as an agent of her employer, she cannot be held liable for interfering with the contract, business relationships, or economic relationships, between the employer and another.")

Examining the Amended Complaint reveals that Plaintiffs have failed to state a claim for tortious interference with a business relationship for two reasons. First, Plaintiffs have not established that Jackson committed independently wrongful or unlawful acts. While Plaintiffs state that Jackson's harassment of Plaintiffs "was so severe that it violated . . . Prince George's County,

Maryland's criminal statute prohibiting harassment," the allegations in the Amended Complaint do not support this conclusion. Am. Compl. ¶ 29. Conclusory legal statements alone cannot avert dismissal under Rule 12(b)(6). *See Labram v. Havel*, 43 F.3d 918 (4th Cir. 1995) (affirming dismissal of complaint where facts did not support cause of action).

Even the specific allegations related to Jackson's alleged harassment of Fry and Cowan simply do not demonstrate that Jackson's acts were independently wrongful or unlawful. For example, Plaintiffs allege that Jackson harassed Fry by unreasonably questioning her performance. Clearly, although this behavior may have caused Fry to experience emotional stress, it does not rise to the level of violence or intimidation, nor does it constitute a violation of criminal law. Likewise, Jackson's purported decision to remove a filing cabinet and office furniture from Fry's office does not constitute an independently wrongful act. Fry cannot credibly maintain that she could bring suit in state court for these actions had they happened outside of the workplace. Nor does the Court embrace the view that this conduct could give rise to a criminal prosecution. Jackson, as a Director of one of the County's organization subdivisions, ordered that someone remove Fry's office furniture, something, it appears, she had the authority to do. That Jackson may have made this decision based on illicit motives does not render her actions "independently wrongful."

Even if this Court found that these actions were independently wrongful, it nevertheless would be compelled to dismiss Count III because Plaintiffs have not alleged that Jackson exceeded the scope of her employment and acted for her own personal benefit. In fact, to the contrary, the Amended Complaint implicitly intimates that Jackson believed that she was acting in furtherance of the interests of the County. The Amended Complaint alleges that Jackson stated that she had limited Fry's involvement in the Safe Kids program because "*the County* did not want a white

person representing them in such a public way." Am. Compl. ¶ 35 (emphasis added). This alleged admission, while it may show that Jackson's actions were misguided, actually undermines Plaintiffs' claim for tortious interference, as it appears that Jackson thought that County did not want Fry to represent it publicly. For this reason, the Court finds that Plaintiffs fail to state a claim for tortious interference with business relations.

B. The LGTCA

Although this Court will dismiss Count III of the Complaint on other grounds, the Court must briefly address Defendants' arguments that the LGTCA bars Count III. The LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code Ann., Cts. & Jud. Proceedings, § 5-304 (West 2006). This notice requirement may be excused "upon motion and for good cause shown." Md. Code Ann., Cts. & Jud. Proc. § 5-304(c).

Plaintiffs acknowledge that the notice requirements of the LGTCA apply to this suit, as they assert that Jackson committed the tort of inference with economic relations, *see Thomas v. City of Annapolis*, 688 A.2d 448, 456 (Md. 1997) (noting that the LGTCA applies to all torts without distinction); *see also Luy v. Baltimore Police Dept.*, 326 F. Supp. 2d 682, 693 (D. Md. 2004) (same), but Plaintiffs claim that the notice sent on May 31, 2005 substantially meets the requirements of the LGTCA.

With respect to Plaintiff Fry, this Court agrees that May 31, 2005 letter (the "Letter") sufficed to notify the County of Fry's grievance and her intention to file suit. This letter alleged Jackson had harassed Fry and the facts in the Letter mirror those alleged in the Complaint. Indeed,

a handwritten note on the Letter indicated that the County intended to treat the May 31, 2005 complaint as a "LGTCA" notice. Although the Letter did not specify what type of tort claim Fry would pursue against the County, it indicates that Fry considered Jackson's conduct disruptive and an impairment to her ability to work. That Plaintiff Fry sent the Letter to the County more than two years after Jackson began her alleged "campaign of intentional and willful acts of harassment" does not make the notice *per se* defective. In her response to Defendants' Motions, Plaintiff Fry has stated that events that occurred as recently as early 2005 also prompted her to file suit.[2]

The Court does not reach the same conclusion with respect to Plaintiff Cowan. The Letter focused primarily on the treatment of Fry, not Cowan, and Cowan appears as little more than an aside in this three-page missive. The letter relays the alleged racial comment that Jackson made to Cowan and states "Cowan was warned by Rhonda Jackson that if she did not stop associating with . . . Fry, then she, . . . Cowan, would suffer. Ms. Jackson's threat has come to pass and she is currently also harassing . . . Cowan." Even assuming that the Letter informed the County that Jackson had harassed Cowan, the two paragraphs pertaining to Cowan did not provide notice of Cowan's prospective suit for tortious interference with economic relations. *Cf. Luy*, 326 F. Supp. 2d at 693 (EEOC complaints alone were not notice of suit for defamation). All references to Cowan were made within the framework of Fry's racial discrimination claim. Indeed, the letter's author, Gary T. Brown, only identified himself as Fry's attorney. Thus, neither Cowan, nor her agent,

---

[2] This Court, however, will not address the issue of whether all of Jackson's actions could be used as support for Plaintiff Fry's tortious interference with business relations claim. Plaintiffs ask this Court to apply the Title VII doctrine of continuing violations to this state law cause of action. This Court is not convinced that the Maryland State Legislature contemplated such an exception to the notice requirements imposed by the LGTCA. Because this Court has dismissed Count III, it will not engage in what remains solely an academic exercise at this point.

provided any notice to the County of her claims.

Perhaps recognizing this deficiency, Plaintiffs' counsel has submitted a motion to demonstrate good cause under the LGTCA. The Maryland Court of Appeals has enunciated the standard for "good cause" is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Moore v. Norouzi*, 807 A.2d 632, 641 (Md. 2002) (quoting *Heron v. Strader*, 761 A.2d 56, 63 (Md. 2000) which in turn quotes *Westfarm Assocs. v. Washington Suburban Sanitary Comm'n,* 66 F.3d 669, 676-77 (4th Cir. 1995)). Viewing all the circumstances surrounding this suit, this Court finds that good cause does not exist for Cowan's failure to comply with the LGTCA. At the time of the May 31, 2005 Letter, Cowan was undoubtedly on notice that she had sustained the alleged injury. Cowan must have communicated that she believed that Jackson had harassed her (Cowan) in order for Fry to include these facts in her letter. Yet, it appears that, to this day, Cowan has not filed any notice with the County. Given that Cowan thought that she suffered some injuries by May 31, 2005, her delay in informing the County of her claim lacks justification, and a reasonably prudent person would not have acted in this manner. As such, in addition to the reasons stated in Part II.A of this Opinion, this Court will dismiss Count III of the Amended Complaint as it relates to Cowan due to her failure to comply with the LGTCA.

While the Court does not believe that Plaintiff Fry has presented sufficient allegations in the record up to this point to set forth a cognizable claim for tortious interference with business relations, Plaintiff Fry will be provided a brief opportunity, if she chooses, to file a second amended complaint that alleges sufficient facts to support a claim for tortious interference with business relations. Because Plaintiff Cowan did not serve the County with notice under the LGTCA in a

timely manner, this Court will dismiss Count III insofar as it relates to Cowan with prejudice.

## CONCLUSION

Having determined that Plaintiffs have failed to state a claim for tortious interference with business relations and having ruled that Plaintiffs cannot maintain a Title VII claim against Jackson, the only viable claims remaining in this suit are Counts I and II against the County. However, this Court will permit Plaintiffs leave to file a Second Amended Complaint, setting forth facts reasonably related to Count III insofar as it concerns Plaintiff Fry. Thus, for all of the aforementioned reasons, the Court will GRANT Defendant Prince George's County's Partial Motion to Dismiss [9] and GRANT Defendant Jackson's Motion to Dismiss [11]. An Order consistent with this Opinion will follow.

Date: April 18, 2006

/s/
Alexander Williams, Jr.
United States District Court